1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLINE LI,

                    Plaintiff,

         v.

NORTHEASTERN UNIVERSITY,

                    Defendant.

CASE NO. 22-CV-00444-LK

ORDER DENYING LEAVE TO
AMEND COMPLAINT

Before the Court is Plaintiff Caroline Li's Motion for Leave to File First Amended Complaint. Dkt. No. 21. Defendant Northeastern University opposes amendment. Dkt. No. 25. For the reasons discussed below, the Court denies the motion.

## I.      BACKGROUND

Northeastern hired Li in September 2016 as a Marketing Manager for its Seattle campus. Dkt. No. 1-1 at 4. At some point in 2017, Northeastern temporarily relocated its administrative staff (including Li) to the fourth floor of their building. *Id.* The fourth floor is of no significance aside from Li's allegations that it was furnished with "low quality and uncomfortable tables, desks, and chairs." *Id.* More specifically, the desks were not adjustable and the chairs "were old, offered

1   no ergonomic support, and broke frequently." *Id.* Li's feet did not touch the floor while seated in

2   her chair and the armrests prevented her from "being able to sit close enough to type on [her]

3   computer[] in a comfortable position." *Id.* She alleges that as a result, she began to experience neck

4   and back pain. *Id.* at 5.

5       Li requested a standing desk for her workspace but was told by the operations manager that

6   Northeastern would not pay for one. *Id.* After an associate dean witnessed Li stretching in pain,

7   however, she apparently requested a standing desk on Li's behalf. *Id.* Four months passed before

8   the operations manager told Li that she needed a doctor's note to obtain a standing desk. *Id.* In

9   January 2018, Li's doctor provided that note and Northeastern ordered her a standing desk. *Id.* In

10  the meantime, though, Li "began to lose feeling in her fingers and experienced a burning sensation

11  in her hands." *Id.* She was diagnosed with carpel tunnel syndrome in March 2018. *Id.*

12      This marked the beginning of a year-long period during which Li's symptoms worsened.

13  *Id.* In June 2019, she was approved to take intermittent FMLA leave one day a week. *Id.* at 6. Li

14  was diagnosed with osteoarthritis of the jaw two months later. *Id.* Around this time, she informed

15  Director of Regional Marketing Gwen Brady that "her health was deteriorating because her

16  workload was too extreme and she did not have enough time off to physically recover." *Id.* Li

17  asked Northeastern to create an assistant marketing position or, alternatively, hire a new Marketing

18  Manager and reclassify her as a part-time contractor. *Id.* Northeastern declined. *Id.*

19      In December 2019, while Li was on a work trip in San Francisco, she allegedly woke up in

20  such bad pain one morning that she could not get out of bed. *Id.*; *see* Dkt. No. 23-7 at 4–7 (Li

21  deposition testimony describing the San Francisco trip); Dkt. No. 23-8 at 2 (Li email to Senior

22  Benefits Specialist Mel Shea describing San Francisco incident and need for leave). Northeastern

23  thereafter placed Li on short-term disability until it expired in February 2020. Dkt. No. 1-1 at 7;

24  Dkt. No. 25 at 2. Between December 2019 and April 2020, Li exchanged several emails with

1   Northeastern representatives about pursuing workers' compensation benefits. Dkt. No. 25 at 2; *see*

2   Dkt. No. 26-3 at 2–6; Dkt. No. 26-8 at 43, 49, 52, 55–56, 59–63, 91–94 (email threads related to

3   workers' compensation). She filed a claim for benefits in late April 2020. Dkt. No. 25 at 2.[1] By

4   June 2020, however, Li exhausted her FMLA leave. Dkt. No. 26-9 at 67. She subsequently applied

5   for but was denied long-term disability benefits in July 2020. Dkt. No. 1-1 at 7. Following that

6   denial, Senior Benefits Specialist Mel Shea and Associate Vice President Mallik Sundharam

7   informed Li that Northeastern would terminate her employment if she did not return to work. *Id.*

8   She failed to do so. And, after her unsuccessful request for an accommodation under the Americans

9   with Disabilities Act, Northeastern terminated Li's employment effective August 28, 2020. *Id.*;

10   s*ee* Dkt. No. 26-5 at 2–3 (termination letter).

11        Eighteen months passed. Then, in March 2022, Li sued Northeastern in King County

12   Superior Court for retaliatory discharge (Count 1), disparate treatment (Count 2), and failure to

13   accommodate her disability (Count 3)—all causes of action under the Washington Law Against

14   Discrimination ("WLAD"). Dkt. No. 1-1 at 2, 8–9; *see* Wash. Rev. Code §§ 49.60.180(2),

15   49.60.180(3), 49.60.210(1). After Northeastern timely removed the case to federal court, Dkt. No.

16   1, the parties conducted a Rule 26(f) conference on May 4th, Dkt. No. 26 at 2. Li did not serve

17   written discovery on Northeastern until June 15th. *Id.* And on July 15th, Northeastern produced

18   approximately 150 documents responsive to Li's request. *Id.*; *see* Dkt. No. 26-8 at 2–161

19   (disclosed documents). Li in turn produced roughly 100 documents from her workers'

20   compensation claim file. Dkt. No. 26 at 2; *see* Dkt. No. 26-9 at 2–106 (sample of disclosed

21   documents).

22

23   [1] The Department of Labor and Industries determined that Li's injuries were not work-related. Dkt. No. 26-1 at 5.
     Although she appealed that decision, she subsequently dismissed the appeal. *Id.*; *see* Dkt. No. 26-8 at 4, 158–59 (notes
     documenting withdrawal of appeal); *id.* at 39 (September 24, 2021 Board of Industrial Insurance Appeals order
24   dismissing appeal).

ORDER DENYING LEAVE TO AMEND COMPLAINT - 3

1    Meanwhile, the August 1, 2022 amended pleadings deadline came and went. Dkt. No. 15

2    at 1. But it was not until mid-October that Li's attorney actually reviewed Northeastern's July

3    disclosure. Dkt. No. 21 at 2. After doing so, he emailed opposing counsel asking whether

4    Northeastern would stipulate to an amended complaint. Dkt. No. 23-1 at 2. Northeastern declined.

5    Li accordingly moved the Court for leave to amend and attached a proposed amended complaint

6    with two new causes of action: wrongful termination in violation of public policy (Count 4) and

7    "[v]iolation of Washington Paid Family [and] Medical Leave Act" (Count 5). Dkt. No. 18; Dkt.

8    No. 19-1 at 10–11.[2]

9    Although the record is unclear as to exactly when, Northeastern turned over a supplemental

10   batch of documents to Li during the week of October 18, 2022. Dkt. No. 21 at 2; Dkt. No. 23 at 3.

11   Li and Mel Shea were deposed on October 24th and 25th, respectively, and—following those

12   depositions—Li withdrew her motion for leave to amend. Dkt. No. 20; Dkt. No. 26-1 at 2; Dkt.

13   No. 23-4 at 3. On November 10th, she re-filed it. Dkt. No. 21. Li's proposed amended complaint

14   now contains a sixth cause of action: FMLA retaliation. Dkt. No. 23-2 at 14; *see* 29 U.S.C. §

15   2615(a)(2).

16                                    **II.    DISCUSSION**

17   Once a district court issues a pretrial scheduling order and the deadline for amended

18   pleadings expires, a motion for leave to amend is governed by Rule 16. *Coleman v. Quaker Oats*

19   *Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,

20   607–08 (9th Cir. 1992). Under Rule 16, "[a] schedule may be modified only for good cause and

21

22   _____

23   [2] Although Li claims that Northeastern violated "WAC 1912-540-010," Dkt. No. 19-1 at 11, the Court surmises that
     she intends to reference Washington Administrative Code § 192-540-010(1), which states that employers "must
     provide a written notice of employee rights to any employee when an employer becomes aware that the employee is
24   taking family leave, medical leave, or a combination of both for a duration of more than seven consecutive days of
     work."

ORDER DENYING LEAVE TO AMEND COMPLAINT - 4

with the judge's consent." Fed. R. Civ. P. 16(b)(4); *accord* LCR 16(b)(6). The Court thus employs a two-step analysis to resolve Li's motion: it "first asks whether [she] has satisfied Rule 16's more stringent 'good cause' requirement, and if good cause is shown, the court then considers whether amendment would be proper under Rule 15." *Kremerman v. Open Source Steel, LLC*, No. C17-953-BAT, 2018 WL 4700526, at *2 (W.D. Wash. Oct. 1, 2018); *accord LifeLast, Inc. v. Charter Oak Fire Ins. Co.*, No. C14-1031-JLR, 2015 WL 12910683, at *2 (W.D. Wash. July 6, 2015).[3] Li does not make it past the first hurdle.

## A.    Rule 16's Good Cause Standard

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. A schedule modification is appropriate only if the amended pleading deadline could not be met despite the diligence of the moving party. *Id.* Carelessness is incompatible with a finding of diligence. *Id.* The Court's inquiry thus focuses on the moving party's reasons for seeking a modification and, "[i]f that party was not diligent, the inquiry should end." *Id.*; *accord Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

In assessing diligence, the Court may consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990); *see also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party

---

[3] Under Rule 15, the Court may deny leave to amend after considering "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)).

seeking amendment since the inception of the cause of action.").[4] When that is the case, the Court may deny leave to amend. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000). The Court may likewise deny leave to amend if Li knew of the facts and theories at issue sufficiently in advance of the deadline to timely assert them. *See, e.g*, *Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x 814, 816–17 (9th Cir. 2020) (party that moved for leave to amend three months after the amended pleadings deadline failed to exercise diligence because it could have asserted its proposed claims before that deadline); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (denying leave to amend where plaintiff's motion "came several months after the stipulated deadline for amending or supplementing the complaint" and "[n]othing in the proposed amended complaint relied on facts that were unavailable before the stipulated deadline.").

## B.    Li Fails to Show Good Cause

Li argues that her "efforts to amend as discovery and depositions [were] ongoing" provides the requisite good cause. Dkt. No. 21 at 5. She avers that she did not learn of the factual bases for her three new claims until "early October of 2022," while reviewing discovery documents in preparation for depositions. *Id.* Northeastern counters by emphasizing that Li filed her motion to amend 102 days after the August 1, 2022 deadline and knew or should have known the facts and theories raised in her amended complaint back when she filed her original complaint. Dkt. No. 25 at 5. The Court discusses the "new" evidence on which Li relies in the context the applicable new claim.

---

[4] The Court recognizes that this is identical to the undue delay inquiry under Rule 15. However, courts in this district have looked to the moving party's pre-existing knowledge of allegedly new facts and theories to measure diligence and, by extension, ascertain whether good cause exists under Rule 16. *See, e.g.*, *Kremerman*, 2018 WL 4700526, at *3–4; *MMMT Holdings Corp. v. NSGI Holdings, Inc.*, No. C12-01570-RSL, 2014 WL 2573290, at *3 (W.D. Wash. June 9, 2014).

1        1.       <u>Count 4: Wrongful Termination in Violation of Public Policy</u>

Li first points to a July 2020 email from Mel Shea to Claims and Risk Specialist Jonathan Williams, in which Shea indicated that the marketing department was "biting at the bit to terminate [Li's] position asap." Dkt. No. 26-8 at 110; Dkt. No. 21 at 5. Li also relies on Shea's October 25th deposition testimony, where she clarified that the "biting at the bit" comment was in reference to management's eagerness to fill Li's position. Dkt. No. 23 at 3; *see* Dkt. No. 23-4 at 4–9 (deposition testimony). According to Li, she "did not have any good faith suspicions" that Northeastern terminated her for filing a workers' compensation claim until this evidence came to light. Dkt. No. 21 at 5; *id.* at 6 ("These facts alone . . . create an inference for a reasonable jury that Defendant terminated Plaintiff because she exercised her rights to file a worker's [sic] compensation claim[.]").

Li's arguments are unavailing. Northeastern disclosed the email at issue in its July 2022 batch of 150 documents, and Li proffers no explanation for her failure to review this production until mid-October—three months after Northeastern disclosed the documents and two and a half months after the amended pleadings deadline. *See MHF Zweite Acad. Film GmbH & Co. KG v. Warner Bros Ent. Inc.*, No. CV 12-2381-JFW (JCX), 2012 WL 13012677, at *2 (C.D. Cal. Aug. 13, 2012) (denying motion to amend where "[p]laintiffs fail to offer any explanation or evidence as to why it took them over seven weeks to review such a small number of documents [4,583 pages' worth] and determine that those documents supported additional claims that had not previously been alleged."). Nor does Shea's October 25th deposition testimony elaborating on the "biting at the bit" email transform core facts that Li reasonably should have known into "new" ones. *See Kremerman*, 2018 WL 4700526, at *4 (plaintiff failed to show good cause because he was aware of the facts at issue before the amended pleadings deadline and "nothing stopped [him] from making th[ose] allegations . . . within the prescribed time"); *George v. Wright, Lerch & Litow,*

*LLP*, No. 115CV00811JMSDML, 2016 WL 10514739, at \*2 (S.D. Ind. May 10, 2016) ("Ms. George's suggestion that she first needed the defendant to 'confirm' or 'cement' the meaning of the defendant's notes before she could evaluate whether to bring a claim is not plausible."). And to the extent Li or her counsel faced any impediment in reviewing the July 2022 production, they made no effort to seek an extension of the deadline for amending pleadings. *See Hollenshead v. Bank of Am., N.A.*, No. 418CV00724ALMCAN, 2019 WL 5959599, at \*3 (E.D. Tex. June 7, 2019) (denying plaintiff's discovery-related motion to amend where plaintiff proffered no explanation for anything "that would have prevented timely review of the discovery materials by counsel" over a two-month period, and therefore failed to show "that despite his diligence he was unable to comply with the scheduling order in this case (or request an extension prior to the passage of the deadline).").

Li further suggests that her belated review of Northeastern's July 2022 production "showed a close proximity between [her] filing of a worker's compensation claim in April or May of 2020, and her termination in August of 2020." Dkt. No. 23 at 2. But the temporal proximity of these events is a fact that Li knew when she filed this lawsuit in March 2022. Nothing in Northeastern's July 2022 production or Shea's October 25th deposition altered the timing between Li's pursuit of workers' compensation benefits and her discharge. To the extent Li was concerned about strengthening her claim with evidence beyond temporal proximity, she could have pleaded the claim on information and belief—a standard practice. *See Edwards Lifesciences LLC v. Cook Inc.*, No. C-03-03817, 2008 WL 913328, at \*3 (N.D. Cal. Apr. 2, 2008) (rejecting party's argument that it lacked facts to prove element of claim in original pleading because it could have pleaded the claim on information and belief).

Li was not diligent and thus fails to show good cause with respect to Count 4. Her motion for leave to amend is denied as to this claim.

2.      Count 5: PFMLA Violation

Li's efforts to add Count 5 to her complaint fall short for the same reason. Here, too, she contends that "facts regarding [her] PFMLA claim did not come to light until [she] reviewed discovery in preparation [for] Mel Shea's deposition[.]" Dkt. No. 21 at 6; *see* Dkt. No. 23 at 3. Li similarly claims that, during the deposition, "it was revealed that [Li] inquired about PFMLA leave after it was announced to her in her termination letter, and Ms. Shea did not offer an opportunity . . . to be reinstated should PFMLA get approved." Dkt. No. 21 at 6; Dkt. No. 23 at 3. Li again fails to explain her failure to review Northeastern's July 2022 production for three months. And Shea's deposition did not generate "new" facts or theories. That Li asked about PFMLA benefits after receiving notice of her eligibility in the August 27, 2020 termination letter—and received no invitation for reinstatement if approved for those benefits—are facts Li was aware of at the time of her original complaint. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) ("[A] district court does not abuse its discretion in denying a motion to amend a complaint . . . when the movant present[s] no new facts but only new theories and provide[s] no satisfactory explanation for his failure to fully develop his contentions originally." (cleaned up)).

In her proposed amended complaint, Li alleges that Northeastern "interfered with [her] rights to PFMLA by not timely informing her of her eligibility for the leave"; failed to inform her "of the PFMLA eligibility [until] her termination date"; "made no offer to [her] telling her she would be reinstated should she be approved for PFMLA by Washington State Employment Security Department on or after August 27, 2020"; and "[a]t no time during her employment . . . notif[ied her] that [it] had a practice of running FMLA leave and PFMLA leave concurrently." Dkt. No. 23-2 at 13. The legal basis for Li's "PFMLA" violation is Washington Administrative Code § 192-540-010(1), which requires an employer to "provide a written notice of employee rights to any employee when an employer becomes aware that the employee is taking family leave,

1    medical leave, or a combination of both for a duration of more than seven consecutive days of

2    work." *See* Dkt. No. 23-2 at 13. Again, though, that Northeastern failed to provide Li with written

3    notice of her benefits eligibility prior to discharge or otherwise "interfered" with her ability to

4    receive those benefits while she was employed are facts that Li knew or should have known at the

5    time of her original complaint. She could have made those allegations but did not. Li was not

6    diligent in pursuing this claim and thus fails to make the requisite good cause showing that would

7    permit amendment. Her motion is denied with respect to Count 5.

8            3.      <u>Count 6: FMLA Retaliation</u>

9         Li also failed to diligently pursue her FMLA retaliation claim. In support of this belated

10    charge, she alleges that Northeastern "showed animus towards her FMLA absences and terminated

11    her employment when she attempted to return to work from FMLA leave." Dkt. No. 23-2 at 14.

12    Li relies on two pieces of evidence that "did not come to light" until Northeastern's October 18,

13    2022 supplemental production: (1) an October 29, 2019 Performance Improvement Plan ("PIP")

14    authored by her supervisor, Lauren Wamelink; and (2) a May 5, 2020 "First Contact Call" form

15    generated by the Department of Labor and Industries. Dkt. No. 21 at 6; *see* Dkt. No. 22-1 at 2–7

16    (PIP); Dkt. No. 23-6 at 2–3 (First Contact Call form). Neither source provides "new" facts.

17         Wamelink's October 2019 PIP flags Li's "excessive number of unplanned absences" and

18    criticizes her repeated decisions to work from home "without providing any notice or requesting

19    permission to do so[.]" Dkt. No. 22-1 at 4. Wamelink also set forth her "expectations" going

20    forward. And one of those expectations was that Li's unplanned time off would be "reduced

21    drastically" and any absences "clearly communicated . . . with as much advanced notice as

22    possible." *Id.* at 7. The PIP, however, was an interactive process, and the document at issue

23    includes Li's responses (in red) to each of Wamelink's points. As relevant here, Li indicated that

24    she planned to begin requesting Fridays off for her once-a-week FMLA leave. *Id.* at 5. She also

objected to Wamelink's expectations for the future: "I cannot do this. As stated above and in my approved FMLA letter." *Id.* at 7. In doing so, Li reiterated her need for weekly physical therapy appointments and rest days. *Id.*

None of this information qualifies as "new" facts learned during discovery. Indeed, Li has known about the PIP—and Wamelink's reprimand for unplanned and excessive leave—since October 2019, long before even the original complaint's filing. She admits this, too. According to Li, Northeastern's production of the PIP "jogged [her] memory about her opposition to being reprimanded regarding FMLA leave." Dkt. No. 21 at 6; *see also* Dkt. No. 22 at 2 ("The document *reminded me* that I explicitly told my boss that some of the absences I was being criticized for were 'FMLA' related[.]" (emphasis added)); *id.* ("The PIP documents . . . *refreshed my recollection* regarding Ms. Wamelink's disdain for me using FMLA leave to accommodate my disabilities." (emphasis added)). But Li's faulty memory does not convert previously known facts into new ones. *See Hotchkins v. Fleet Delivery Serv.*, 25 F. Supp. 2d 1141, 1150 (D. Or. 1998) (where a plaintiff's basis for his newly proposed retaliatory discharge claim included complaints of discriminatory treatment he made prior to being terminated, he "knew of the basis for his retaliatory discharge claim before this action was filed" and there was "no excuse for the lengthy delay in asserting such a claim").

Her reliance on the Department of Labor and Industries' May 2020 "First Contact Call" form is equally unavailing. Li points to this document because, in her view, it shows that Risk Services Director Sonya Ross "represented" to the Department that Li "took FMLA leave in response to a negative performance improvement plan." Dkt. No. 21 at 5; *accord* Dkt. No. 23 at 3. The comment section of the call form contains the following note: "IW [Injured Worker] was going to quit but did [not] and her performance plan was not going well so she went out on medical leave and has been on FMLA." Dkt. No. 23-6 at 3. The record, however, demonstrates that Li has

possessed this document since at least July 2022, when she disclosed it to Northeastern along with approximately 100 other documents from her workers' compensation claim file. *See* Dkt. No. 25 at 3 ("Plaintiff produced to Defendant more than 100 documents relating to her L&I claim, including her injury report."); Dkt. No. 26-9 at 2–106 (sample of claim file documents that Li produced, which includes the first contact call form at issue). In fact, and as Northeastern points out, Li "had possession of or access to her entire L&I file" from the get-go. Dkt. No. 25 at 5. Li thus reasonably could have—indeed, should have—discovered the call form and facts therein prior to filing her original complaint, and certainly prior to the amended pleading deadline. She instead waited to review her own claim file until the eve of depositions and did not move to assert her FMLA claim until three months after the amended pleading deadline. Li thus failed to diligently pursue her FMLA retaliation claim and cannot demonstrate good cause to justify late amendment. *See Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 994 (S.D. Ohio 2020) ("[A] plaintiff cannot stick his or her head in the sand and fail to take steps to discover their claims when the information is readily available to them."). The Court denies Li's motion with respect to Count 6.

"Parties are required to work hard to ferret out in the early stages of discovery information that may prompt a desire to amend." *George*, 2016 WL 10514739, at *3. Unjustified and lengthy delays do not satisfy a plaintiff's burden to demonstrate diligence. Because Li fails to satisfy Rule 16's good cause standard, the inquiry ends. *See Johnson*, 975 F.2d at 609.[5]

---

[5] Li would not prevail under Rule 15 either. Although the "general rule" is that leave to amend should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), delay is a relevant—though non-dispositive—factor in the court's analysis, "especially when no reason is given for the delay," *Lockheed Martin*, 194 F.3d at 986. Moreover, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). Both parties acknowledge that discovery would need to be reopened in this case due to Li's avoidable delay in amending her complaint, thereby disrupting the case schedule and imposing additional litigation costs on Northeastern. *See Lockheed Martin*, 194 F.3d at 986 ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.      CONCLUSION

The Court accordingly DENIES Li's Motion for Leave to File First Amended Complaint. Dkt. No. 21.

Dated this 4th day of January, 2023.

Lauren King
United States District Judge

ORDER DENYING LEAVE TO AMEND COMPLAINT - 13